Stephen H.M. Bloch (# 7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

Todd Tucci (Idaho Bar # 6526) (*pro hac vice* application forthcoming)
Hannah Goldblatt (Oregon Bar # 205324) (*pro hac vice* application forthcoming)
Andrew Hursh (Montana Bar # 68127109) (*pro hac vice* application forthcoming)
ADVOCATES FOR THE WEST
P.O. Box 1612 Boise, Idaho 83702
Telephone: (208) 342-7024
ttucci@advocateswest.org
hgoldblatt@advocateswest.org
ahursh@advocateswest.org

Attorneys for Proposed Defendant-Intervenors Conservation Groups

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION – SOUTHERN REGION**

| | |
|---|---|
| WASHINGTON COUNTY, UTAH, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; U.S. FISH AND WILDLIFE SERVICE; and DOES 1 through 10, inclusive, <br><br> Defendants, <br><br> and <br><br> CONSERVE SOUTHWEST UTAH, et. al., <br><br> Proposed Defendant-Intervenors. | **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** <br><br><br> Case No. 4:24-cv-00067-DN-PK <br><br><br> Judge David Nuffer <br> Magistrate Judge Paul Kohler |

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 1

    I.    2021 Decisions Approving the Northern Corridor Highway Right-of-Way ....................... 2

    II.    2024 Remand Decisions .................................................................................................. 3

ARGUMENT ................................................................................................................................. 6

    I.    This Motion to Intervene is Timely. ................................................................................. 7

    II.    Conservation Groups Have Substantial Protectable Interests at Stake. ............................ 7

    III.    Plaintiff's Lawsuit Threatens Conservation Groups' Interests. ...................................... 9

    IV.    Defendants May Not Adequately Represent Conservation Groups' Interests.............. 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) .................................................................................................. 11

*Conserve Southwest Utah v. U.S. Department of Interior*, No. CV 21-1506, 2023 WL 7922785
   (D.D.C. Nov. 16, 2023) ........................................................................................................... 3

*New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Service*,
   540 F. Appx 877 (10th Cir. 2013) .......................................................................................... 11

*San Juan County v. United States*,
   503 F.3d 1163 (10th Cir. 2007) ................................................................................................ 7

*Utah Ass'n of Counties v. Clinton* ("*UAC*"),
   255 F.3d 1246 (10th Cir. 2001) .............................................................................. 6, 7, 10, 11

*Western Energy Alliance v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) .............................................................................. 6, 7, 10, 11

*WildEarth Guardians v. National Park Service*,
   604 F.3d 1192 (10th Cir. 2010) ........................................................................................... 7, 9

**Statutes**

43 U.S.C. § 1702 .......................................................................................................................... 10
43 U.S.C. § 1712 .......................................................................................................................... 10

**Other Authorities**

BLM National NEPA Register, DOI-BLM-UT-C030-2023-0038-EIS,
   https://eplanning.blm.gov/eplanning-ui/project/2026562/570 (last visited September 9, 2025) 5

BLM National NEPA Register, Highway Right-of-Way, Issuance of an ITP, and RMP
   Amendments, Washington County, Utah, https://eplanning.blm.gov/eplanning-
   ui/project/1502103/570 (last visited September 9, 2025) ......................................................... 2

FWS, Record of Decision, Proposed Amendment of an ESA Section 10(a)(1)(B) ITP to
   Washington County (Dec. 19, 2024), available at

https://eplanning.blm.gov/public_projects/2026562/200567514/20125350/251025330/Wash%20Co%20HCP%20Amended%20Permit%20ROD%2020241219%20-%20Final%20for%20signature_AMMsigned_508.pdf (last visited September 9, 2025) .......... 4

U.S. Dep't of the Interior, BLM, Record of Decision, January 2021, available at https://eplanning.blm.gov/public_projects/1502103/200341977/20034449/250040647/Record%20of%20Decision%20and%20Approved%20RMP%20Amendments_BLM_2021.01.13.pdf (last visited September 9, 2025) ................................................................................................ 2

**Rules**

Federal Rule of Civil Procedure 24 ................................................................................. 9, 11, 12

# LIST OF ACRONYMS

| | |
|---|---|
| BLM | Bureau of Land Management |
| BiOp | Biological Opinion |
| ESA | Endangered Species Act |
| FWS | U.S. Fish & Wildlife Service |
| HCP | Habitat Conservation Plan |
| ITP | Incidental Take Permit |
| NCA | National Conservation Area |
| RMP | Resource Management Plan |
| UDOT | Utah Department of Transportation |

Conserve Southwest Utah, Conservation Lands Foundation, Center for Biological Diversity, Southern Utah Wilderness Alliance, The Wilderness Society, and WildEarth Guardians (collectively, "Conservation Groups") respectfully move this Court for an Order granting them intervention as of right in this matter.

## BACKGROUND

This litigation arises from a series of administrative and legal actions concerning Utah Department of Transportation's ("UDOT") application for a right-of-way for the Northern Corridor Highway, a four-lane highway proposed to transect Red Cliffs National Conservation Area ("NCA") and Mojave desert tortoise critical habitat in Washington County, Utah. Proposed Defendant-Intervenors Conservation Groups have been actively involved in the administrative and legal processes on these issues, including the prior litigation and settlement that gave rise to Plaintiff's current lawsuit.

Conservation Groups are six organizations comprising millions of staff, members, and supporters dedicated to protecting sensitive environmental resources, endangered species, and special landscapes.[1] Conservation Groups' organizational missions focus on achieving conservation and environmentally smart development in Southwest Utah; lawful and effective management of the U.S. Bureau of Land Management's ("BLM") National Conservation Lands System, including the Red Cliffs NCA; protecting biodiverse ecosystems and imperiled species, including the Mojave desert tortoise; and sound administration of wild lands and wildlife in Utah

---

[1] Wittek Decl. ¶¶ 9–10; Miller Decl. ¶¶ 6–8; Spivak Decl. ¶¶ 3–4; Corr Decl. ¶ 3; Overby Decl. ¶¶ 5–6; Spotts Decl. ¶¶ 12–18.

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 1

and across the United States.[2] Conservation Groups have spent decades engaged in conservation work and advocacy regarding the lands in and around Red Cliffs NCA as well as protection of the Mojave desert tortoise.[3] That work has included extensive engagement on relevant decision-making by BLM and the U.S. Fish and Wildlife Service ("FWS"), including comments and other advocacy regarding the Northern Corridor Highway, Resource Management Plan ("RMP") amendments, and processes under the Endangered Species Act ("ESA") relevant to this case.[4]

## I.     2021 Decisions Approving the Northern Corridor Highway Right-of-Way

In January 2021, then-Secretary of the Interior David Bernhardt approved the right-of-way to allow UDOT to move forward with the Northern Corridor Highway.[5] At the same time, FWS issued a biological opinion ("BiOp") for the Northern Corridor Highway and associated RMP amendments ("2021 Northern Corridor BiOp"). FWS also issued an incidental take permit ("ITP") associated with Washington County's 2020 amended habitat conservation plan ("HCP") that authorized "take" of threatened Mojave desert tortoise.[6]

Subsequently, Conservation Groups filed a lawsuit in D.C. District Court challenging BLM and FWS's decisions associated with the approval of the Northern Corridor Highway right-

---

[2] Wittek Decl. ¶¶ 9–10; Miller Decl. ¶¶ 7–8; Spivak Decl. ¶ 3; Corr Decl. ¶¶ 3–4; Overby Decl. ¶¶ 5–6; Spotts Decl. ¶¶ 12–18.
[3] Wittek Decl. ¶¶ 11–16; Miller Decl. ¶ 9; Spivak Decl. ¶ 6; Overby Decl. ¶ 12.
[4] Wittek Decl. ¶¶ 11–16; Thomas Decl. ¶¶ 13–53; Miller Decl. ¶¶ 9–12; Spivak Decl. ¶¶ 6–9; Overby Decl. ¶¶ 12–33; Spotts Decl. ¶¶ 19–20.
[5] U.S. Dep't of the Interior, BLM, Record of Decision, January 2021, available at https://eplanning.blm.gov/public_projects/1502103/200341977/20034449/250040647/Record%20of%20Decision%20and%20Approved%20RMP%20Amendments_BLM_2021.01.13.pdf (last visited September 9, 2025).
[6] See BLM National NEPA Register, Highway Right-of-Way, Issuance of an ITP, and RMP Amendments, Washington County, Utah, https://eplanning.blm.gov/eplanning-ui/project/1502103/570 (last visited September 9, 2025).

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 2

of-way.[7] Washington County and UDOT intervened in that case, which Conservation Groups did not oppose.[8] After Conservation Groups moved for summary judgment in February 2023, Defendants moved to voluntary remand the right-of-way approval and associated decisions based on legal errors identified in Conservation Groups' motion. Additionally, Conservation Groups and Defendants entered into an out-of-court settlement agreement.[9] Under the agreement, upon the court's granting of Defendants' remand motion, Defendants would prepare a supplemental environmental analysis and issue new decisions regarding the right-of-way and amended RMPs.[10] Defendants also committed to withdraw and then, if necessary, review and update the BiOps associated with the right-of-way and amended RMPs.[11]

In November 2023, the D.C. District Court granted Defendants' motion, remanding Defendants' decisions related to the 2021 Northern Corridor Highway and right-of-way for reconsideration.[12] Defendants subsequently took actions as required by the court's order and settlement agreement, including those challenged by Plaintiff here.

## II.     2024 Remand Decisions

In March 2024, in accordance with the D.C. District Court's remand order and the settlement agreement with Conservation Groups, FWS withdrew the 2021 Northern Corridor

---

[7] *See* First Am. Compl., *Conserve Sw. Utah v. U.S. Dep't of Interior*, No. CV 21-1506-ABJ (D.D.C. July 27, 2021), ECF No. 16.
[8] *See* Resp. to Mot. to Intervene, *Conserve Sw. Utah*, No. CV 21-1506-ABJ (D.D.C. July 15, 2021), ECF No. 10.
[9] Pls.' Reply re Mot. for Leave to File Sur-reply, Ex. 1 (Settlement Agreement), *Conserve Sw. Utah*, No. CV 21-1506-ABJ (D.D.C. Oct. 13, 2023), ECF No. 75-2.
[10] *See id.*
[11] *Id.*
[12] *Conserve Sw. Utah v. U.S. Dep't of Interior*, No. CV 21-1506, 2023 WL 7922785, at *9 (D.D.C. Nov. 16, 2023).

BiOp and issued an amended BiOp ("March 2024 BiOp").[13] Because the Northern Corridor Highway right-of-way was remanded for reconsideration, the March 2024 BiOp covers only the effects of BLM's amended RMPs for the St. George Field Office and Red Cliffs NCA on Mojave desert tortoise and their critical habitat; it excludes the portions of the 2021 Northern Corridor BiOp that related to the highway right-of-way.[14]

In August 2024, before Defendants issued the remaining decisions required by the court's order—including a new decision on UDOT's right-of-way application—Plaintiff filed the present case. Plaintiff raises four claims against Defendants.[15] The First and Second Claims challenge unidentified FWS decisions or determinations regarding continued application of "changed circumstances" measures in the County's 2020 HCP, in alleged violation of Section 10 of the ESA.[16] The Third and Fourth Claims challenge the lawfulness of the March 2024 BiOp under ESA regulations regarding reinitiation of consultation.[17]

In November 2024, Plaintiff and Defendants filed their first stipulation to stay the litigation to February 2025, because "Defendants anticipate taking action that they contend will moot Plaintiff's claims."[18] Plaintiff noted that it "might seek to amend its complaint in response to the new decision."[19]

---

[13] *See* FWS, Record of Decision, Proposed Amendment of an ESA Section 10(a)(1)(B) ITP to Washington County at 4 (Dec. 19, 2024), available at https://eplanning.blm.gov/public_projects/2026562/200567514/20125350/251025330/Wash%20Co%20HCP%20Amended%20Permit%20ROD%2020241219%20-%20Final%20for%20signature_AMMsigned_508.pdf (last visited September 9, 2025).
[14] *See id.*
[15] *See generally* Compl., ECF No. 2.
[16] Compl. ¶¶ 70–92.
[17] Compl. ¶¶ 94–115; *see also* 50 C.F.R. § 402.16; *Conserve Sw. Utah*, 2023 WL 7922785, at *9.
[18] ECF No. 23 ¶ 3.
[19] *Id.* ¶ 5.

In November and December 2024, Defendants finalized the following additional actions as required by the D.C. District Court order and settlement agreement: (1) a final supplemental environmental impact statement reconsidering UDOT's right-of-way application and Washington County's ITP; (2) a new decision terminating UDOT's right-of-way for the Northern Corridor Highway; (3) a new decision amending Washington County's ITP to reflect BLM's decision to terminate UDOT's right-of-way ("2024 ITP"); and (4) a new BiOp for the 2020 HCP.[20]

After that, the Parties sought numerous times to extend the stay in this case.[21] Plaintiff noted that it "continue[s] to evaluate the effects of Defendants' decision on this matter, including whether Defendants' recent decisions give rise to additional claims under the ESA or other applicable laws."[22] In July 2025, the Parties filed their third stipulation to extend the stay until October 16, 2025, noting that "Plaintiff is engaged in active discussion with Defendants regarding potential resolution of this matter."[23]

As indicated in the Parties' initial stipulation to stay as well as in Conservation Groups' proposed motion to dismiss filed herewith, Plaintiff's case is now mooted by Defendants' December 2024 decisions.[24] However, if Plaintiff's case nonetheless goes forward, it threatens to upend important environmental analyses and decisionmaking processes that are necessitated by federal law, and based on the D.C. District Court's order and the settlement agreement between

---

[20] See BLM National NEPA Register, DOI-BLM-UT-C030-2023-0038-EIS, https://eplanning.blm.gov/eplanning-ui/project/2026562/570 (last visited September 9, 2025).
[21] ECF Nos. 25, 27.
[22] Id.
[23] ECF No. 29.
[24] See ECF No. 23 ¶ 3; Proposed Mot. to Dismiss (filed herewith).

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 5

Conservation Groups and Defendants. Plaintiff's lawsuit thus threatens Conservation Groups' longstanding interests in achieving conservation on federal public lands in Southwest Utah and protection of the Mojave desert tortoise. As their prior conflicts with Defendants over these same issues amply illustrates, Conservation Groups' interests are not adequately protected by the existing parties. For these reasons, and because this motion is timely filed, Conservation Groups easily meet the requirements for intervention as of right, and this motion should be granted.

## ARGUMENT

Under Federal Rule of Civil Procedure 24(a)(2), upon a timely motion, "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[25] The Tenth Circuit takes "a 'liberal' approach to intervention and thus favors the granting of motions to intervene."[26] "Federal courts should allow intervention where no one would be hurt and greater justice could be attained."[27] "[T]he requirements for intervention may be relaxed in cases raising significant public interests."[28] Conservation Groups easily meet each of the requirements for intervention as of right under Rule 24(a)(2).

---

[25] Fed. R. Civ. P. 24(a)(2).
[26] *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citation omitted).
[27] *Utah Ass'n of Cntys v. Clinton* ("*UAC*"), 255 F.3d 1246, 1250 (10th Cir. 2001) (cleaned up).
[28] *San Juan Cnty. v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013).

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 6

I.  **This Motion to Intervene is Timely.**

Conservation Groups filed this motion just over one month after Plaintiff's latest stipulation to extend the stay and roughly one year after Plaintiff's initial complaint was filed.[29] No dispositive motions have been filed in the case nor has any other substantive proceeding occurred. Indeed, this case has been stayed since November 2024.[30] Because the litigation is at an early stage, there is no prejudice to any party from granting Conservation Groups' Motion to Intervene and the Motion is timely.[31]

II. **Conservation Groups Have Substantial Protectable Interests at Stake.**

Conservation Groups' environmental concern is a legally protectable interest sufficient to support intervention as of right under Rule 24(a)(2).[32] Conservation Groups undeniably have a longstanding and substantial "interest relating to the property or transaction that is the subject of the action" here, as demonstrated through extensive advocacy, administrative engagement, and prior litigation regarding the same series of federal decisions as well as the same public lands and wildlife affected by this case.[33]

---

[29] *See* ECF No. 29.
[30] *See* ECF No. 24.
[31] *See UAC*, 255 F.3d at 1250–51 (intervention timely given lack of prejudice to plaintiffs and the "relatively early stage of the litigation" where only "document discovery, discovery disputes, and motions by defendants seeking dismissal on jurisdictional grounds" had occurred).
[32] *See Zinke*, 877 F.3d at 1165–66 (conservation groups with a "record of advocacy" and "demonstrated concern for the damage to public lands caused by oil and gas development" had legally protectable interest); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (it is "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest") (citation omitted).
[33] *See* Fed. R. Civ. P. 24(a)(2).

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 7

Conservation Groups have dedicated extensive time and resources to the protection of lands and wildlife in and around Red Cliffs NCA, including the Mojave desert tortoise.[34] They have been engaged at every level of environmental review and decisionmaking as BLM and FWS have undertaken resource management planning, ESA consultation, and other processes relevant to the administration of Red Cliffs NCA, protection of the Mojave desert tortoise, and consideration of the Northern Corridor right-of-way.[35] Additionally, Conservation Groups' staff and members regularly use and enjoy the Red Cliffs NCA and areas threatened by the Northern Corridor highway; and they cherish opportunities to view the Mojave desert tortoise in its natural habitat.[36]

To defend these legally protectable interests, in 2021 Conservation Groups filed litigation over Defendants' initial decisions to approve the right-of-way for the Northern Corridor Highway through Red Cliffs NCA. The resulting remand and reconsideration of those decisions through Conservation Groups' lawsuit and settlement agreement with Defendants led to Defendants' issuance of the March 2024 BiOp challenged by Plaintiff here as well as the ultimate 2024 decisions to terminate the right-of-way. Conservation Groups have a strong interest in ensuring that these latest decisions are upheld.[37] Thus, Conservation Groups have the requisite protectable interests to support intervention.

---

[34] Thomas Decl. ¶¶ 12–52; Wittek Decl. ¶¶ 11–16; Miller Decl. ¶¶ 9–22; Overby Decl. ¶¶ 12–33, 38; Spivak Decl. ¶¶ 5–9; Corr Decl. ¶ 4.
[35] Thomas Decl. ¶¶ 20–52; Wittek Decl. ¶¶ 11–16; Miller Decl. ¶¶ 13–22; Overby Decl. ¶¶ 20–33; Spivak Decl. ¶¶ 6–9; Corr Decl. ¶ 24; Spotts Decl. ¶¶ 19–20.
[36] Thomas Decl. ¶¶ 54–63; Wittek Decl. ¶¶ 17–19; Miller Decl. ¶¶ 24–26; Spotts Decl. ¶¶ 22–26, 30; Spivak Decl. ¶ 10; Corr Decl. ¶¶ 5, 10–19.
[37] Thomas Decl. ¶¶ 60–64; Wittek Decl. ¶¶ 17–22; Miller Decl. ¶¶ 22, 27; Spivak Decl. ¶¶ 9, 11–12; Overby Decl. ¶¶ 37–38; Spotts Decl. ¶¶ 28, 31–32; Corr Decl. ¶¶ 25–27.

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 8

### III. Plaintiff's Lawsuit Threatens Conservation Groups' Interests.

Conservation Groups also satisfy Rule 24(a)(2)'s impairment prong, which requires a showing that the litigation "may as a practical matter impair or impede the movant's interest."[38] This is a "minimal burden" and requires the movants to show "only that impairment . . . is possible if intervention is denied."[39]

Plaintiff's lawsuit threatens Conservation Groups' interests in protecting the federal public lands and habitat for the Mojave desert tortoise to which they have dedicated extensive and ongoing efforts. Plaintiff's requested relief would upend ESA analysis that was critical to the resolution of Conservation Groups' prior lawsuit against Defendants. It also threatens to undercut critical environmental protections for Mojave desert tortoise and lands in and around the Red Cliffs NCA. For example, Plaintiff's seek "to void the March 2024 Amended BiOp and reinstate the 2020 Northern Corridor BiOp" that was predicated on the *approval* of the Northern Corridor right-of-way.[40] A decision by the Court to grant such relief would reinstate injurious conditions that led Conservation Groups to file a challenge in federal court in 2021 and would be in conflict with Defendants' subsequent decision to *terminate* the right-of-way.[41] Similarly, a decision by the Court to grant other relief such as declaring Defendants' renewed ESA consultation unlawful would impair Conservation Groups' ongoing work to protect public lands and wildlife. Such harms to Conservation Groups' interests would not occur if the Court upholds

---

[38] Fed. R. Civ. P. 24(a)(2).
[39] *WildEarth Guardians*, 604 F.3d at 1199.
[40] Compl., ECF No. 2 at 25.
[41] However, for this reason, Plaintiff's claims are moot. *See* Proposed Mot. to Dismiss (filed herewith).

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 9

as lawful the challenged federal actions. Additionally, if Plaintiff's amend or supplement their complaint to include additional claims against the new decisions terminating the right-of-way, Conservation Groups interests could be further impaired.

### IV. Defendants May Not Adequately Represent Conservation Groups' Interests.

As the Tenth Circuit has repeatedly recognized, Rule 24(a)(2)'s adequacy prong is a low bar which is satisfied where the government's broad obligation to represent the public interest "may conflict" with the intervenors' "particular interest"—even if they share the same ultimate litigation objective.[42] "[T]he possibility of divergence of interest need not be great."[43]

Here, Conservation Groups' conservation interests are more narrowly focused than the general obligation to the public carried by Defendants. Unlike BLM, for example, which is required by law to balance competing uses of the public lands across the nation,[44] Conservation Groups dedicate their work exclusively to ecological conservation and habitat protections for threatened species like the Mojave desert tortoise.[45] Even where Defendants may be required to take *some* of their concerns into account, Defendants must also balance "wide-ranging and often conflicting interests."[46] This warrants intervention.[47]

Conservation Groups' divergence with the government is plainly illustrated by their prior litigation challenging Defendants' earlier decision-making on the very matters at issue in this

---

[42] *UAC*, 255 F.3d at 1255–56; *Zinke*, 877 F.3d at 1168.
[43] *Zinke*, 877 F.3d at 1168.
[44] *See* 43 U.S.C. § 1702(c), 1712(c)(1); *Zinke*, 877 F.3d at 1169 ("[W]here there is evidence that the government has multiple objectives, we have declined to find that it could adequately represent intervenors' interests.").
[45] *See* Thomas Decl. ¶¶ 12–52; Wittek Decl. ¶¶ 3–8, 10, 21; Miller Decl. ¶¶ 9–22; Overby Decl. ¶¶ 12–33, 38; Spivak Decl. ¶¶ 5–9; Corr Decl. ¶ 4.
[46] *Zinke*, 877 F.3d at 1169.
[47] *Id.*

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 10

case.[48] Moreover, Conservation Groups intend to move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1).[49] Although Defendants have indicated that they too believe Plaintiff's action is moot, they have not moved to dismiss.[50] Because Conservation Groups' interests are not "wholly align[ed]" with those of Defendants, intervention is appropriate.[51]

Finally, there is no guarantee that Defendants' approach to defending this action will not shift during litigation. The chances of a shift in agency policy are higher in a case like this one where an election and change of executive administrations has occurred during the course of litigation.[52] Conservation Groups cannot rely on Defendants to adequately represent their focused interests in conservation and environmental protection and should be allowed to intervene.

## CONCLUSION

Conservation Groups respectfully request that the Court grant their Motion to Intervene under Federal Rule of Civil Procedure 24(a)(2).

---

[48] *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (federal defendants' representation inadequate where intervenors' prior litigation was necessary to compel relevant actions).
[49] *See* Proposed Mot. to Dismiss (filed herewith).
[50] *See* Defs.' Statement of Position, ECF No. 22 (asserting defense that "[a]ll of Plaintiff's claims are prudentially moot").
[51] *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 540 F. Appx 877, 881 (10th Cir. 2013) (unpublished).
[52] *See Zinke*, 877 F.3d at 1168–69 (courts cannot "assume that the government agency's position will stay static or unaffected by unanticipated policy shifts" and a change of administration "raises the possibility of divergence of interest or a shift during litigation") (cleaned up); *see also UAC*, 255 F.3d at 1256.

CONSERVATION GROUPS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT — 11

Respectfully Submitted September 15, 2025.

/s/ Hanna Larsen
Hanna Larsen

Stephen Bloch
Todd Tucci (*pro hac vice* application forthcoming)
Andrew Hursh (*pro hac vice* application forthcoming)
Hannah Goldblatt (*pro hac vice* application forthcoming)

Attorneys for Proposed Defendant-Intervenors Conservation Groups

## CERTIFICATE OF COMPLIANCE

In accordance with DUCivR 7-1(a)(4)(D), I hereby certify that proposed Defendant-Intervenors Conservation Group's Motion to Intervene and Memorandum in Support contains a total of 3,032 words.

*/s/ Hanna Larsen*
Hanna Larsen
